## Exportation and Sale of Prison Products.

*Prisons—Prison labor—Prison products—Surplus knit goods—Exportation for sale—Act of May 25, 1921.*

1. The purposes for which prison labor is to be used in the manufacture and production of supplies, and the vendees to whom such products may be sold, are limited and classified by the Act of May 25, 1921, P. L. 1144. No provision is made for the exportation of any such products.

2. However desirable the opportunity to dispose by exportation of surplus stocks of knit goods and like products of prison labor may be, there is no legal authority to employ prisoners for, or to make sale of, prison products for export and delivery outside of the United States.

Department of Justice. Opinion to Dr. Ellen C. Potter, Secretary of Welfare.

3 D. & C.

Exportation and Sale of Prison Products.

ENGLISH, Dep. Att'y-Gen., July 19, 1923.—Replying to your inquiry of July 3, 1923, as to whether or not your department may dispose of surplus knit goods and like prison products for delivery outside of the United States, I beg to advise as follows:

The Act of May 25, 1921, P. L. 1144, creating the Department of Public Welfare, in defining its powers, in section 21 *(a)* and *(c)*, specifies the particular purposes for which prison labor may be used, and to whom the products may be sold, as follows:

"*(a)* To establish, maintain and carry on industries in the Eastern Penitentiary, the Western Penitentiary, the Pennsylvania Industrial Reformatory at Huntingdon, and such other correctional institutions of this Commonwealth as it may deem proper, in which industries all persons sentenced to the Eastern or Western Penitentiary or to the Pennsylvania Industrial Reformatory at Huntingdon, or to such other correctional institution of the Commonwealth, who are physically capable of such labor, may be employed at labor for not to exceed eight hours each day, other than Sundays and public holidays. Such labor shall be for the purpose of the manufacture and production of supplies for said institutions, or for the Commonwealth, or for any county, city, borough or township thereof, or any State institution, or any educational or charitable institution receiving aid from the Commonwealth, or for the preparation and manufacture of building material for the construction or repair of any State institution, or in the work of such construction or repair, or for the purpose of industrial training or instructing, or partly for one and partly for the other of such purposes, or in the manufacture and production of crushed stone, brick, tile and culvert pipe or other material suitable for draining roads of the State, or in the preparation of road building and ballasting material. . . .

"*(c)* To arrange for and make sale of the products, produced in the said industries carried on in the said penitentiaries, reformatory or other correctional institutions, to the Commonwealth, or to any county, city, borough or township thereof, or to any State institution, or to any educational or charitable institution receiving aid from the Commonwealth."

The purpose for which labor is to be used in the manufacture and production of supplies, and to whom the products may be sold, is thus limited and classified. The sale of products for export would not come under any of such classifications.

The purpose of the restriction on prison labor is undoubtedly to prevent materials coming into competition with products of home manufacturers. An examination of earlier legislation shows the restrictions on prison labor and products were gradually made more drastic, until, by the Act of June 1, 1915, P. L. 656, the purposes were limited to supplies for the Commonwealth or for any county or for any public institution owned, managed or controlled by the Commonwealth, as well as road construction work. The amendment of April 6, 1921, P. L. 101, added to that act "cities," "boroughs" and "townships," as well as "educational or charitable institutions receiving aid from the Commonwealth," to those who might benefit by the manufacture and sale of prison products. These provisions are embodied in the Act of 1921, creating the Department of Public Welfare.

A question of a similar nature arose during the late war in connection with the contemplated manufacture and sale of half-hose for troops of foreign governments. At that time the work was done under the direction of the Prison Labor Commission, and this department, in an opinion dated June 17, 1916, by Joseph L. Kun, Deputy Attorney-General, held there was no legal

authority for the employment of prisoners except as specifically authorized by the Act of June 1, 1915, P. L. 656, and which, as in this instance, did not embrace the proposed new outlet for the prison products. The Act of 1921, under which you are operating, is a substantial re-enactment of the provisions of the Act of 1915, with specific new purposes designated.

You are, therefore, advised that, however desirable the opportunity to dispose of surplus stocks in this manner might be, both in preventing idleness and in building up your manufacturing fund, there is no legal authority to employ the prisoners for, or to make sale of, prison products for export and delivery outside of the United States.

From C. P. Addams, Harrisburg, Pa.